COPY

1     <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2     Name /*//2 // WISVE   CESAR      A.

          (Last)           (First)         (Initial)

3     Prisoner Number *V-26598*

4     Institutional Address *5905. LAKE EARL DRIVE,*

5     *CRESCENT CITY CALIFORNIA. 95532.*

6     ================================================================

                   UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8     *CESAR A. WUISVE*

      (Enter the full name of plaintiff in this action.)       )

9                            )  C 08   1095

                           )  Case No.

10    *R. A. HOCE/(WARDEN)*        )   (To be provided by the clerk of court)

11                            )  PETITION FOR A WRIT

12                            )  OF HABEAS CORPUS   TEH

13                            )

14    (Enter the full name of respondent(s) or jailor in this action)  )  (PR)

                           )

15

16    ================================================================

                      Read Comments Carefully Before Filling In

17    When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19    counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20    San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21    this district if you are challenging the manner in which your sentence is being executed, such as loss of

22    good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24    one of the above-named fifteen counties, your petition will likely be transferred to the United States

25    District Court for the district in which the state court that convicted and sentenced you is located. If

26    you are challenging the execution of your sentence and you are not in prison in one of these counties,

27    your petition will likely be transferred to the district court for the district that includes the institution

28    where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS     - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12      (a)    Name and location of court that imposed sentence (for example; Alameda

13             County Superior Court, Oakland):

14             SAN MATO COUNTY!     SUPERIOR COURT!

15             Court                      Location

16      (b)    Case number, if known SC595710 B!

17      (c)    Date and terms of sentence _____

18      (d)    Are you now in custody serving this term? (Custody means being in jail, on

19             parole or probation, etc.)         Yes ✓     No _____

20             Where?

21             Name of Institution: PELICAN BAY STATE PRISON

22             5950 LAKE EARL DRIVE!
               Address: CRESCENT CITY California, 95532,

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Two "2" COUNTS SECOND DEGREE Robbery And A

27  Firearm CHARGE (Possession), And Discharging A

28  Firearm within The City SECTIONS! 211, 212.5, 246 /12022,

PET. FOR WRIT OF HAB. CORPUS     - 2 -

1    3. Did you have any of the following?

2          Arraignment:                        Yes ☒      No _____

3          Preliminary Hearing:                Yes ☒      No _____

4          Motion to Suppress:                 Yes _____  No _____

5    4. How did you plead?

6          Guilty _____   Not Guilty ☒   Nolo Contendere _____

7          Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9          Jury ☒   Judge alone_____   Judge alone on a transcript _____

10   6. Did you testify at your trial?              Yes ☒      No _____

11   7. Did you have an attorney at the following proceedings:

12         (a)   Arraignment                   Yes ☒      No _____

13         (b)   Preliminary hearing           Yes ☒      No _____

14         (c)   Time of plea                  Yes _____  No _____

15         (d)   Trial                         Yes ☒      No _____

16         (e)   Sentencing                    Yes ☒      No _____

17         (f)   Appeal                        Yes ☒      No _____

18         (g)   Other post-conviction proceeding  Yes ☒   No _____

19   8. Did you appeal your conviction?             Yes ☒      No _____

20         (a)   If you did, to what court(s) did you appeal?

21               Court of Appeal               Yes ☒      No _____

22               Year: 2006     Result: CONVICTION AFFIRMED!

23               Supreme Court of California    Yes ☒      No _____

24               Year: 2006     Result: PETITION FOR REVIEW DENIED

25               Any other court               Yes N/A    No N/A

26               Year: N/A      Result: N/A _____

27

28         (b)   If you appealed, were the grounds the same as those that you are raising in this

1        petition?                    Yes ⊻     No___

2     (c)   Was there an opinion?       Yes ⊻     No___

3     (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                              Yes N/A   No N/A

5         If you did, give the name of the court and the result:

6         THE WAS "NO" LATE APPEAL EVER

7         Filed.

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?        Yes ✗    No___

10     [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition. You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15  U.S.C. §§ 2244(b).]

16    (a)   If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding. Attach extra paper if you need more space.

18        I.   Name of Court: CALIFORNIA SUPREME COURT

19           Type of Proceeding: HABEAS CORPUS Proceedings

20           Grounds raised (Be brief but specific):

21           a. All Grounds Raised Herein

22           b._____

23           c._____

24           d._____

25           Result: DENIED_____ Date of Result:_____

26        II.  Name of Court: ___ N/A

27           Type of Proceeding: ___ N/A

28           Grounds raised (Be brief but specific):

1   a. _____ N/A _____
2   b. _____ " _____ " _____
3   c. _____ " _____ " _____
4   d. _____ " _____ " _____
5   Result: _____ N/A _____ Date of Result: N/A

6   III.   Name of Court: _____ N/A _____
7   Type of Proceeding: _____ N/A _____

8   Grounds raised (Be brief but specific):
9   a. _____ N/A _____
10  b. _____ " _____ " _____
11  c. _____ " _____ " _____
12  d. _____ " _____ " _____
13  Result: _____ N/A _____ Date of Result: N/A

14  IV.   Name of Court: _____ N/A _____
15  Type of Proceeding: _____ N/A _____

16  Grounds raised (Be brief but specific):
17  a. _____ N/A _____
18  b. _____ " _____ " _____
19  c. _____ " _____ " _____
20  d. _____ " _____ " _____
21  Result: _____ N/A _____ Date of Result: N/A

22  (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23        Yes _____   No ✗

24  Name and location of court: _____ N/A _____

25  B. GROUNDS FOR RELIEF

26  State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS      - 5 -

1   need more space. Answer the same questions for each claim.

2   [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim One: _SEE ATTACHED "ONE" For All FEDERAL

6   _CONSTITUTIONAL Grounds_

7   Supporting Facts: _SEE ATTACHED Ages 1. Thru 3._

8   _For All Supporting FACTS_

9

10

11   Claim Two: _SEE ATTACHED Age (4) For All Federal

12   _CONSTITUTIONAL Grounds. And For Judices_

13   Supporting Facts: _SEE ATTACHED Ages (5) thru (6) For

14   _All Supporting FACTS_

15

16

17   Claim Three: _SEE ATTACHED Ages 7. For All Federal

18   _CONSTITUTIONAL Grounds_

19   Supporting Facts: _SEE ATTACHED Ages (7) Thru (20)_

20   _For All Supporting FACTS_

21

22

23   If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   _N/A. All Grounds Mentioned Herein

26   _Have Been Submitted Before The State_

27   _Supreme Court. And Denied._

28

PET. FOR WRIT OF HAB. CORPUS      - 6 -

1      List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3   of these cases:

4   *Mayo Vs Henderson, 13 F3d 528 (2nd Cir. 1999)*

5   *Beck Vs Alabama, 447 U.S. 625, 65 L.Ed.2d 392*

6   *Vachon Vs New Hampshire, 99 S.Ct. 664 (1979)*

7   Do you have an attorney for this petition?                          Yes_____   No_____

8   If you do, give the name and address of your attorney:

9   _____

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on ____02·07·08____                    _____

14              Date                                    Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

# EXHIBIT A

S145807

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re CESAR  AGOSTO QUISPE on Habeas Corpus

Petition for writ of habeas corpus is DENIED.

**SUPREME COURT**
**FILED**

FEB - 7 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

MC-275

Name _MR CESAR A. WUISTE_

Address _5905. LAKE EARI DRIVE_

_CRESCENT CITY CALIFORNIA. 95532_

_PELICAN BAY STATE PRISON_

CDC or ID Number _V-26558_

_IN THE STATE OF CALIFORNIA_

_SUPREME COURT_
(Court)

_CESAR A. WUISTE_
Petitioner

vs.

_R. A. HOREL (WARDEN)_
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

_(To be supplied by the Clerk of the Court)_

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

*SEE ATTACHED PAGE: 1, FOR ALL FEDERAL CONSTITUTIONAL VIOLATIONS*

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

*SEE ATTACHED PAGES: (1 Thec(3) FOR ALL FACTS CONSTITUTING THE "NO" EXISTING EVIDENCE SUBSTANTIATING COUNT: 1, OF THE INFORMATION*

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

**PETITION FOR WRIT OF HABEAS CORPUS**

This petition concerns:

- [x] A conviction
- [ ] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify):* _____

1. Your name: *MR. CESAR A. QUISTE.*

2. Where are you incarcerated? *PELICAN BAY STATE PRISON (PBSP)!*

3. Why are you in custody? [x] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

*"2" COUNTS OF SECOND DEGREE Robbery. Discharge of A FIREARM. AND SUSTAINING FIREARM CHARGE*

b. Penal or other code sections: *SECTION! 211. 212.5(c). 246.3! 12022.53(b)*

c. Name and location of sentencing or committing court: *SAN MATO COUNTY SUPERIOR COURT 400 COUNTY CENTER 4TH. FT. Redwood CITY. CA. 94063*

d. Case number: *SC54570B.*

e. Date convicted or committed: _____

f. Date sentenced: _____

g. Length of sentence: *23 YEARS!*

h. When do you expect to be released? *UNKNOW AT This TIME!*

i. Were you represented by counsel in the trial court? [x] Yes. [ ] No. If yes, state the attorney's name and address:

_____

_____

4. What was the LAST plea you entered? *(check one)*

[x] Not guilty [ ] Guilty [ ] Nolo Contendere [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[x] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

7. Ground 2 or Ground _____ *(if applicable):*

SEE Attached Page: 4. For The Actual PreJudice Recieved Associated with The Know Existing Count: 1. of The Informatiual.

a. Supporting facts: SEE Attached Page 4 For All Statements of Fact Justifuing The Actual PreJudice Recieved.

b. Supporting cases, rules, or other authority:

## Grounds For Relief:

The Petitioner claims under The "No" Evidence Rule. No evidence exist in The Record substantiating And/or supporting Count: 1. The Robbery. And The Related Firearm Enhancement. This Alone violates The Petitioner's Federal Constitutional Rights under The 5th. And 14th Amendment under The Due-Process Clause.

## Supporting Facts. And Information:

## Preliminary Facts And Information"

On _____ 200___. The Petitioner was unlawfully Detained. And Later Arrested And charged with "2" Counts of Second Degree Robbery, In violation of Section. 211. And 212.5(C). of The California Penal Code 1.e._____
On _____ , 200___ The Petitioner was Arraigned in Municipal Court. And Therein, The Petitioner entered a Plea of "Not Guilty" which. The court excepted while scheduling The Preliminary Hearing For: _____ 200___ while Remanding The

(1)

PETITIONER INTO CUSTODY PENDING THE CONCLUSIONS OF THE PRELIMINARY HEARING.

ON: _____ , 200__ , THE PETITIONER PERSONALLY APPEARED FROM CUSTODY WITHIN THE PRELIMINARY HEARING. AND THEREUPON THE CONCLUSIONS OF THE PRELIM. THE MAGISTRATE FOUND "GOOD CAUSE" TO HOLD THE PETITIONER'S TO ANSWER ON COUNT: 1. AND 2. OF THE INFORMATION SECOND DEGREE ROBBERY).

ON: _____ , 200__ , FROM CUSTODY THE PETITIONER APPEARED IN SUPERIOR COURT DEPT: ___ , WHILE THEREIN. ENTERING A PLEA OF NOT GUILTY WHICH. THE COURT EXCEPTED AND LATER SCHEDULED PRE-TRIAL PROCEEDING 1.E.

HENCE. WHILE BEING REPRESENTED BY COUNSEL. AND DURING THE COURSE OF JURY TRIAL. THE PROSECUTER did NOT " PROVE. OR PRODUCE ADEQUATE PHYSICAL EVIDENCE TO SUBSTANTIATE: 1. A PERSON HAD POSSESSION OF SOME PROPERTY OF SOME VALUE: 2. THE PROPERTY WAS TAKEN FROM THAT PERSON OR FROM HIS IMMEDIATE PRESENCES: 3. THE PROPERTY WAS TAKEN AGAINST THE WILL OF THAT PERSON. AND:4. THE PROPERTY WAS TAKEN WITH THE SPECIFIC INTENT TO PERMANENTLY DEPRIVE THAT PERSON OF THE PROPERTY 1.E HENCE. BY THE RECORD NOT REFLECTING

(2)

OR "NO" PHYSICAL EVIDENCE EXISTING SUBSTANTIAT-
ING COUNT. 1, OF THE INFORMATION (SECOND DE-
GREE ROBBERY.) THE PETITIONER CLAIMS. HIS
INCARCERATION AND CONVICTION ON SUCH COUNT. 1,
VIOLATES THE 5TH AND 14TH AMENDMENT OF
THE FEDERAL CONSTITUTION UNDER THE DUE-PRO-
CESS CLAUSE.


RESPECTFULLY SUBMITTED:


BY _____

Grounds For Relief:

THE PETITIONER FURTHER CLAIMS By "NO" EVIDENCE EXISTING IN THE RECORD SUBSTANTIATING COUNT: 1. OF THE INFORMATION. SECOND DEGREE ROBBERY). THE PETITIONERS CONVICTION And INCARCERATION ON SUCH COUNT CONSTITUTES A SUBSTANTIAL AMOUNT OF UNDUE PREJUDICE.

SUPPORTING FACTS. And INFORMATION:

HERE, By THE RECORD "NOT" REFLECTING 1. THE PERSON (ALLEGED VICTIM) HAVING POSSESSION OF SOME PROPERTY OF SOME VALUE: 2. THE PROPERTY WAS TAKEN FROM THAT PERSON OR FROM HIS/HER IMMEDIATE PRESENCES: 3. THE PROPERTY WAS TAKEN AGAINST THE VICTIMS WILL AND: 4. THE PROPERTY WAS TAKEN WITH THE INTENT TO PERMANENTLY DEPRIVE THAT PERSON OF THE PROPERTY THE PETITIONER HAS IN FACT RECEIVED A SUBSTANTIAL AMOUNT OF UNDUE PREJUDICE. AND THE UNLAWFUL CONVICTION ON COUNT: 1. OF THE INFORMATION.

RESPECTFULLY SUBMITTED:

/S/ _____

(4)

<u>Grounds For Relief:</u>

The Petitioner Further Claims. Under The "NO" Evidence Rule, Count: 2, Of The Information. Second Degree Robbery. Allegedly Against Mr. Romero. "No" Evidence Exist In The Record Substantiating The Entire Conviction. Therefore. Such Conviction Has Violated The 5th. And 14th. Amendment Rights under The Due-Process Clause Of The Federal Constitution.

<u>Supporting Facts. And Information:</u>

With Respect To Count: 2, Of The Information. The Second Degree Robbery Against Alleged Victim No. Romero. The Record Does Not Reflect, Or Nor Has The Prosecutor Proven Or Introduced Evidence Substantiating' 1. The Alleged Victim Having Some Personal Property In His/Her Possession Of Some Value: 2. The Alleged Personal Personal Was Taken From That Persons Or Immediate Presences: 3. The Property Was Taken Against The Alleged Victim's Well. And 4. The Property Was Taken With The Intent To Permanently Deprive That Person Of The Property.

Hence. By The Lack Of. Or "No" Existing

(5)

Physical evidence in the record to substantiate the crime charged Second Degree Robbery. The petitioner claims the conviction, and his incarceration on such count violates the fundamental process of Due-Process As implied by the 5th, and 14th amendment of the Federal Constitution.

Respectfully submitted

/s/ _____

Executed cnc: 08-03-06 , 2006

61

Grounds For Relief:

In Furtherance, The Petitioner Claims by The lack of, or "No" Physical Evidence existing in The Record To Substantiate The Alleged Second Necroff Robbery on Alleged Victim Mr. Romeo. A Substantial Amount of Undue Prejudice Has Been Received!

Supporting Facts. And Information!

Here. By The Prosecuting Attorney "Not" Showing. And/or Establishing, or "No" Physical Evidence existing in The Record Establishing:

1. The Alleged Victim Having in His Possession some Personal Property Of Some Value: 2. The Alleged Personal Property was Taken From The Victims Personal Presences, or immediate Area: 3. The Personal Property was Taken Against The Alleged Victims Well. And 4. The Personal Property was Taken with The intent To Permanently Devone The Alleged Victim of His Personal Property. i.e.

By The lack of The Above Showing. The Petitioner in This Case Has in Fact Re-

(20)

CEIVED A _SUBSTANTIAL_ AMOUNT OF UNDUE,
PREJUDICE. And A VIOLATION OF THE PETITION-
ERS FEDERAL CONSTITUTIONAL Rights,

Respectfully Submitted

Date: 02.07.08

(5)

## Grounds For Relief:

The Petitioner claims by the trial Counsel Requesting For Discharges of The Lesser included offence Jury Instruction to The Jury. And The Trial Court Failure to do so even with Substantial Evidence in the Record Constituting The Reading of The lesser included offence instructions. And over the The Defense Counsels Timely objection. The Petitioner Has Recened a un Fair Jury Trial in violations of The 5th. 6th. And 14th Amendment under Due-Process. And a Fair Trial of the Federal Constitution.

## Supporting Facts. And Information:

It is well settled. Prior To. And During The course of The Jury Trial. The Prosecutor Pleaed. Relied on The Theory. And Sought To Prove. The Petitioner committed count. 1. And 2. of The Information Second Degree Robbery And Air Jacck And Air Romero. Thus. when The Prosecutor case closed. The Petitioner Took The witness stand. And Testified And while Doing so

(9)

The record, "Does Not" Reflect. The Petitioner Having Prerequisite Knowledge of Any Anticipated Robbery. The Petitioner Voluntary Taking Either Alleged Victim Mr. Doah, or Mr. Romero's. Belongings

Thus. Based on The Undisputed Testimony Associated with The Amount And/or Value of The Alleged Items or Personal Property. The Petitioner's Counsel. Requested For The Reading of The "Lesser included offense Instruction." Preferably. Theft. or Grand Theft. or Petty Theft,

The Trial Court Denied "Sue slante" Reading. of The Lesser included offense Instruction. To which The Petitioner Claims. The Jury was "Not" Given An Alternative Means or Method in Consideration of The Findings of Guilt or Innocence. or The Lesser included offense i.e.

Hence, By The Trial "Court Not" Reading The Lesser included offense Jury Instructions Grand Theft. Petty Theft, or Receiving Stolen Property. . . . The Petitioner Has in Fact Received A Unfair Jury Trial in Violation of The 5th. 6th. And 14th Amendment, of The Federal Constitution under The Due-Process Clause. And The Right. To Receive A Fair Jury - - - - - -

Trial.
        Hence, Based on The Above. The
Petitioner Claims. The Conviction And Sen-
Tencing on Count. 1. And 2. Is In Fact Illegal.


        Respectfully Submitted


        S/ _____


    Executed on: 08.03.06 ___ 2006.

(11)

Grounds For Relief:

The Petitioner claims. By The Trial Court Refusal To Read. or Discharge The Jury with The "Lesser included offense" Jury Instruction on either Theft. Petty Theft. or Grand Theft. or Receiving Stolen Property Coupled with The Petitioners Timely objection The Petitioner Has in Fact, Received a Substantial Amount of undue Pre Judice!

Supporting Facts. And Information:

Here. The Petitioner Claims. By The Prosecutor. inability To Prove one. or more or all Necessary elements Constituting Second Degree Robbery on Both Alleged Victims. Mr Toub. And Mr Romero. Coupled with. The Petitioners Conflecting And/or disputed Testimony Assiciated With not Having Prerequisite Knowledge of Any Anticipated Robbery or not Being Personally observed or Participating in Any Robbery. i.E. The Request For The Reading of The Lesser included offense instruction would "

(12)

HAVE ALLOWED THE JURES AN ALTERNATIVE METHOD IN WHICH TO CONSIDER IN THE DETERMINATION OF GUILT, OR INNOCENCES. OR THE LESSER INCLUDED OFFENCE. THEREFORE, BY THE TRIAL COURT "NOT" READING THE LESSER INCLUDED OFFENSE JURY INSTRUCTIONS THE PETITIONER HAS IN FACT RECEIVED A SUBSTANTIAL AMOUNT OF INCLUE PREJUDICE. AND A UNFAIR JURY TRIAL.

RESPECTFULLY SUBMITTED.

/S / BOB WISE

EXECUTED INC. 08 - 03 , 2006

(13)

## Grounds For Relief:

The Petitioner Claims. To Have Received Ineffective Assistance of Trial And Appellate Counsel Via Both Counsels "omitting" Significant And obvious Claims in The Record while pursuing Significant And obvious "weaker" Claims. This Alone, Has violated The Petitioners Federal Constitutional Rights under The 6th Amendment under Counsel. And Extending To The 5th And 14th Amendment under The Due-Process Clause.

## Supporting Facts. And Information:

Claim 1. Prior To. And Therefrom The Petitioners Detention, And Later Arrest on. _____, And The Petitioners inability to Clearly understand And speak The "English" Language." One of the officers. or Detective Allegedly Read The "Miranda Rights" which The Petitioner did Not" understand But, Via A Head "nod" Acknowledge Hearing what was Being Said By The officer. or Detective i.e Later. without notice. And During The

(14)

Jury Trial. This Same Officer or Detective took the witness stand and testified to the Petitioner Acknowledge understanding the "Miranda Warning" and Admitted to committing the underlying crime charges. Thus, this information was transmitted to the Petitioner via A Spanish interpreter. Once Petitioner over hear This False And Misleading Admission. The Trial counsel was notified for 1. objection Because: 2. Requesting For A Hearing on This False implications or 3. Filing A Motion for suppression which. The Trial counsel "did not" do.

Later after conviction And sentencing and Appointment of The Appellate counsel. The Petitioner Repeatedly. Notified The Appellate counsel of The Trial counsel's failure to Address. And/or Establish A record on The officer or Detective False Assertions of Guilt. And this claim should Be Raised on direct state court Appeal. which The Appellate counsel "did not" do.

Claim: 2 The Petitioner Also claims During The Pre-Trial And Trial setting date

OR THE RIGHT TO RECEIVE A FAST, AND STEEDY. TRIAL WITHIN A (60) DAY PERIOD.

During such time. The Prosecutor. Requested for a extension of Time which. The Trial Court Granted. Without the Defense Counsel objecting or Establishing a Record and/or moving for a dismissal of all alleged Crimes Charges. For Fast, and Steedy Trial Violation i.e.

Hence. After the Trial, and Convic- Tion. A Timely Notice of Appeal was Filed and later. Appellate Counsel Mr. Donald R. Tickle, was Appointed. During Countless Per- sonal Communications. The Petitioner's Humbly Requested That the issue of being Denied a Fast, and steedy Trial be Raised on Di- rect Appeal.

The Appellate Counsel Failed to Raise The Fast and steedy Trial Claim on Direct Appeal. Even Though. It is Obvious in the Record.

Claim 3. Also. During the course of the Jury Trial. And During the course of the Prosecutors witness. Mr. Romeras. Testimony. He did in Fact Testify to. The Petitioner "Not" Being "identified" as the Perpetrator of the alleged Crime Against Him. Based on This

FACT. And AFTER. The TRIAL. And CONVIC-
TION. And APPOINTMENT OF THE APPELLATE COUN-
SEL. THE PETITIONER. AGAINS. NOTIFIED THE
APPELLATE COUNSEL OF THIS VERY IMPORTANT ISSUE.
And THAT IT WAS NECESSARY TO RAISE THE
PETITIONER "NOT" BEING POSITIVELY "IDENTIFIED"
By MR. ROMERO. And THIS SHOWS FACTUAL
INFORMATION BEING DOCUMENTED. OR RECORDED IN THE
RECORD. THE APPELLATE COUNSEL "DID NOT"
EVEN REVIEW OR CONSIDER THIS PARTICULAR CLAIM
And ITS MERITS I.E,

HENCE. By THE APPELLATE COUNSEL DISMISS-
ING THE ABOVE NOTED CLAIMS. THE APPELLATE
COUNSEL PERFORMANCE FELL SHORT OF FEDERAL
CONSTITUTIONAL STANDARDS WHICH. RENDERED THE
ENTIRE APPELLATE PROCEEDING FUNDAMENTALLY UN-
FAIR AND IN VIOLATION OF THE PETITIONER'S FEDERAL
CONSTITUTIONAL Rights UNDER THE 6TH. AND 14TH.
AMENDMENT.

RESPECTFULLY SUBMITTED

/S/ _____

(17)

Grounds For Relief:

The Petitioner Claims. By The Appellate Counsel omitting Significant. And obvious Claims in The Record. And Persuing "Weaker" Claims The Petitioner Has Received A Substantial Amount of Undue Prejudice i.e.

Supporting Facts. And Information.

Based on All Claims of Ineffective Assistance of Appellate Counsel As Mentioned Herein. The Petitioner Has Received "Two" Types of Actual Prejudice.

First. Had The Above noted Claims Been Raised on Direct State Court Appeals. its more likely Than not. i.e There is A Reasonable Probability which is more likely Than Probable The out come of The Entire Proceedings would Have Been Different. Therefore. Prejudice Has Been Received. And

Second. By The Appellate Counsel Persuing Significant. And obvious "Weaker" Claims in The Record. And This Claim Being.

The Trial Court erred By Failing To Give A Unanimity Instruction For The Alleged Robbery of Mr. Toal. Because

(18)

THE PROSECUTOR PRESENTED EVIDENCE
OF MORE THAN ONE ACT UPON WHICH
A CONVICTION COULD BE BASED

By THIS "WEAKER" CLAIM BEING PRE-
SIDED ON DIRECT APPEAL. HERE AGAIN PREJUDICE
HAS BEEN RECEIVED.


RESPECTFULLY SUBMITTED


/S/ _____


EXECUTED ON: 08-03 ____ 2006.


(19)

## Declaratory Relief

THE PETITIONER' THE CESAR A. WUSTE. IN THIS HABEAS SEEKS PETITION. HEREBY. And NOW Asks FOR THE Following DECLARATORY RELIEF,

1. BASED ON THE NATURE And All Claims MENTIONED IN THIS HABEAS PETITION(S). "GRANT" THIS PETITION IN ITS ENTIRETY. While DISMISSING COUNTS! 1. And 2. And DECLARING THE PETITIONERS ENTIRE SENTENCE As RELIEVED By APPLICABLE STATE law. OR

2. UPON THE COURTS REVIEW OF THIS ENTIRE HABEAS PETITION. ISSUE AN ORDER DIRECTING THE RESPONDENT TO FILE WITHIN THE COURT WHILE SERVING UPON THE PETITIONER An ANSWER ADDRESSING All CLAIMS MENTIONED HEREIN. While ALLOWING THE PETITIONER TO FILE. And/or A TRAVERSE."

HENCE. AFTER THE COURTS REVIEW. ISSUE THE APPROPRIATE ORDER UNDER STATE. And FEDERAL LAW FOR REVERSAL. And EITHER RELEASE. OR GRANT THE PETITIONER ANEW Trial or STATE COURT DIRECT APPEAL.

RESPECTFULLY SUBMITTED!
/S/ _____

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): *CALIFORNIA COURT OF APPEALS   FIRST APPELLATE DISTRICT*

b. Result _*DENIED*_                                c. Date of decision: _*2/23/06*_

d. Case number or citation of opinion, if known: _*A105757.   SEE EXH.(A) THE OPINION*_

e. Issues raised: (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

*Mr. Donald R. Tickle (Appellate Counsel)*

9. Did you seek review in the California Supreme Court? ☒ Yes ☐ No. If yes, give the following information:

a. Result _*DENIED*_                              b. Date of decision: _*MAY , 2006*_

c. Case number or citation of opinion, if known: _____  *NONE*

d. Issues raised: (1) _*SAME ISSUES IN EXH.(A)*_

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal. *THE APPELLATE COUNSEL REFUSED TO RAISE ALL CLAIMS MENTIONED HEREIN*

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review: *NOT APPLICABLE (N/A)*

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
   *Attach documents that show you have exhausted your administrative remedies.*

21

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☑ No. If no, skip to number 15.

13. a. (1) Name of court: _____ *N/A*

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____ *N/A*

   (3) Issues raised: (a) _____ *N/A*

   (b) _____ *"*     *"*

   (4) Result *(Attach order or explain why unavailable):* _____ *N/A*

   (5) Date of decision: _____ *N/A*

   b. (1) Name of court: _____ *N/A*

   (2) Nature of proceeding: _____ *N/A*

   (3) Issues raised: (a) _____ *N/A*

   (b) _____ *"*     *"*

   (4) Result *(Attach order or explain why unavailable):* _____ *N/A*

   (5) Date of decision: _____ *N/A*

   c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   *NONE*

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)   *THERE HAS BEEN NO DELAY "*

16. Are you presently represented by counsel? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

   *NONE*

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☑ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:   *THE PETITIONER IS EXHAUSTING ALL AVAILABLE STATE COURT REMEDIES*

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _____

▶ _____
(SIGNATURE OF PETITIONER)

22

Filed 1/23/06  P. v. Quispe CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or
ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

CESAR AGOSTO QUISPE,

    Defendant and Appellant.

A105751

(San Mateo County
Super. Ct. No. SC54510B)

A jury found defendant Cesar Agosto Quispe guilty, as charged, of the second degree robberies of Enoc Romero and Juan Jocop (counts 1 & 2; Pen. Code, §§ 211, 212.5, subd. (c))[1] and negligent discharge of a firearm (count 3; § 246.3), also sustaining firearm allegations of personal use (§ 12022.53, subd. (b)) and personal discharge (*id.*, subd. (c)) for each robbery. Sentenced to 23 years in prison, Quispe appeals claiming, for Jocop's robbery, insufficient evidence to support the crime or firearm enhancements, and error in refusing requested instruction on lesser included offenses and failing to instruct sua sponte on unanimity. We reject the claims and affirm the judgment.

### BACKGROUND

Near 1:00 a.m. on the night of December 17, 2002, defendant and cohorts David Perez and Gomer Basave, all passengers in a white Ford Bronco, left the Bronco, robbed Romero and Jocop at an unlit bus stop, and then fled together and left in the Bronco. All

---

[1] All unspecified section references are to the Penal Code.

of defendant's appeal claims center on whether and to what extent he helped rob Jocop, as opposed to Romero, and so we highlight that testimony in our summary.

**Jocop.** Jocop, age 21 at trial, understood some English but testified through a Spanish interpreter. He did not know his attackers, whom we call the gunman, knife man and unarmed man, but other testimony identified them as defendant, Basave and Perez.

Jocop and Romero worked at Van's Restaurant in Belmont and knew each other from over a year on the job. They left together at the end of their shift that night, at 12:45 a.m., and walked to the bus stop on divided El Camino Real near the cross street of Ruth Avenue. They waited alone there, Jocop sitting on a bench listening on headphones to Romero's CD player, and Romero standing six feet to his right. Jocop saw three men walk together toward them across El Camino Real. They split up at the bus stop, two going toward Romero, and one toward Jocop. Dressed similarly in sweatshirts and loose pants. Two had multi-color (black, red and/or orange) sweatshirts, and one of those had a gun in his right hand and wore a reddish bandana over his face that hid all but his eyes.

Jocop removed his headphones as soon as the trio neared and, seeing the gun, feared for himself and Romero. Looking to his right, he saw the gunman shove Romero back into a "dark corner" with the gun trained on him; the unarmed man was right beside the gunman. Jocop's attention then focused on his own assailant, who held a knife within inches of his neck and, in English, demanded his wallet. Frightened by the knife, too, Jocop handed over his wallet (holding $18 to $20), entreating the man to take whatever he wanted, but not harm him. The knife man took the wallet and joined the other two; then the unarmed man came and took the CD player. The assailants then walked back together across El Camino Real. As they reached the center divider, Jocop, still frightened and not thinking straight, but knowing he needed some cards in the wallet, yelled out, "[G]ive me back the wallet." The trio "went walking rapidly" but tossed the wallet back toward him. Jocop went to pick it up and, while looking down at it, heard three gunshots from the men. Looking no further at the men, he retreated with the wallet and heard from Ruth Avenue, where the men were headed, the sounds of a car engine rev, and burning rubber. The wallet had no money left, but all of his cards.

2

At the bus stop, Romero seemed nervous and more upset than Jocop had ever seen him. The bus came just then, and they boarded, Jocop using a pass from his wallet and Romero using two dollars he still had. Right after boarding, Romero said, "[T]hose sons of bitches took my wallet." Romero's wallet had not been tossed back.

The entire encounter lasted 45 seconds to a minute, and the victims were robbed just five or six feet apart. The assailants stayed together, even when walking off, and did not argue amongst themselves or ask what the others were doing. Confused and fearing retaliation, neither victim reported to police that night. When later interviewed by police, Jocop identified a photograph of the knife man, but without specifying that a different man took the CD. Never recognizing the gunman, Jocop could not identify him at trial.

**Romero.** Romero, age 25 at trial, also knew some English, but testified through a Spanish interpreter. His account was largely consistent with Jocop's, although he did not see the knife man's weapon and saw the Bronco and perpetrators before the assaults, thus estimating the total time at a minute or two. Romero had only two or three dollars before borrowing some from Jocop, apparently at the bus stop before they were robbed.

Romero first saw the Bronco pass southbound, the driver looking at him. It turned onto Ruth Avenue, where Romero saw the rear of it as he heard doors open and close and then saw three men urinate up against a cyclone fence. As the three reached the corner to cross toward him, one folded a handkerchief into a triangle and tied it behind his head so that it covered his face from the nose down. Once the trio had crossed to the northbound lanes, the masked man produced a small pistol. He proceeded, with the others following less than 10 feet behind. Romero was frightened, and afraid of the gun. Jocop removed his headphones when Romero warned that someone was approaching them for something.

The gunman pushed Romero back, shoved the gun (a revolver) into his stomach and ordered: "[T]urn around, give me everything you have. Don't look at me." Romero feared for his life. When he turned around, the gunman pushed him onto the hood of a pickup, pressed the gun to his back, searched his back pockets and snatched his wallet, yanking so that a chain attaching it to a belt loop broke the loop. Romero, his hands on

25

3

the hood, looked back to see the gunman's face but could only see from the eyes up. He could not identify defendant then or at trial, but testified that defendant's dark skin color was like the gunman's. Romero did identify his wallet, later recovered by police, and like Jocop, said that a revolver in evidence was like the gunman's. Romero was unable to tell the color of the men's clothing or see much of what was happening to Jocop.

After the gunman took his wallet, an unarmed, shorter man "got in front" and, gesturing with his hands, cussed at and "offended" Romero, calling him "a fucker" in English, and repeating things two or three times. The three men then retreated and went across El Camino Real back toward the Bronco. Romero did not hear Jocop ask for his wallet back, but saw it tossed back and land on the sidewalk. Just beyond the center divider, the man with the bandana raised his gun and fired three or four shots into the air, as the others ran ahead to Ruth Avenue. The gunman then ran after them, and Romero next heard doors open and close, and the engine started up and race. He saw the Bronco leave and, further frightened by the shots, turned to find Jocop also frightened. They boarded the bus, Romero using money from a front pocket that had not been searched.

Romero was too frightened and angry to call police that night but related the events the next day at work because people there had heard shots. His boss called the police, and police showed Romero the Bronco, inside of which was his CD player. In a photo lineup, he did not identify anyone, but at trial he identified a photograph of Perez as the unarmed man who cussed and offended him.

**Basave.** Gomer Basave, the knife man and originally a codefendant in the action, testified (in English for the People), having suffered a plea-based conviction and sentence for his own role in the matter. He corroborated the victims' accounts except for insisting that he *never saw* (but heard) a gun, had his back turned to the others while robbing Jocop and did not see what they were doing, and suggested that the victims "flagged" them as they passed. He conceded that he had been and still remained friends with defendant and had spoken with him on the phone in the past month—just "friendly chitchat," yet knowing defendant was going to court.

Earlier that night, Basave had drunk cognac, smoked marijuana and hung with friends in the San Mateo Hills. The Bronco driver, Ernesto (Guttierez), picked up him and David Perez first, then Marco G., and finally Cesar (defendant) and Stacy (Escojido), who were dating. The couple sat with their heads touching, but defendant did not appear to be asleep.

As the Bronco passed the bus stop, Basave saw two Hispanic men he felt were looking or waving. People in the vehicle spoke of going back to "see what they wanted," and "some of the boys brought up about jacking them or something." Whoever said "jacking" (who, he did not know) said it "loudly." "Jacking" meant to "take somebody's possession[s]," and that, he testified, "is what I did." The Bronco made a U-turn, turned onto Ruth Avenue and parked at the curb, facing away from El Camino Real. Basave and Perez, followed by defendant, got out of the Bronco. All of them urinated against a fence and then walked "together" to the corner. Basave had a knife and focused on the men at the bus stop across the street, not his companions. Upon reaching the bus stop, Basave drew his knife on one of the men, held the weapon near his neck, demanded his wallet, and got it. Defendant and Perez were with him, but he was not facing them and "didn't see nothing." He "ran back across the street" afterward, ahead of the others, and heard what sounded like two shots behind him. He turned to see defendant dropping his hand, as if having shot a gun into the air, but (no matter what he may have told a police detective later) did not see a gun. All three of them got back into the Bronco; he never saw anyone with property from the two men, or anyone with a gun. Basave wore a red "49ers" sweater, but he did not recall what others were wearing.

**The neighbor.** Charles Presley lived across the street from where the Bronco parked and noticed it blocking a neighbor's driveway as he stood on his porch having a smoke. He heard five-to-six gunshots and, looking in that direction, heard voices speaking in Spanish and saw three men come running from a parking lot on the corner of Ruth Avenue and El Camino Real. He ducked into the house and watched from the front window as three men ran to the Bronco and got in on the far side (not rear, as far as he saw). The Bronco sped away with lights off as Presley tried in vain to see the license

26

plate number. He quickly reported the incident to police and was later shown, and identified the Bronco. He had noticed that one man wore an orange-to-pinkish sweatshirt, with some design on the front, and that another wore beige pants and a grayish striped shirt or sweatshirt.

**Escojido.** Escojido, charged as a codefendant until the charges were dismissed, remained defendant's girlfriend at trial. She testified (in English), but gave an account that minimized defendant's role and statements she gave police after they had been apprehended. She and defendant had been drinking and smoking marijuana and were hung over and tired when Guttierez and the others, all friends of theirs, came by around midnight in the Bronco to pick them up to smoke more marijuana and socialize. They were in the car when the Bronco stopped in the San Mateo Hills and when the group left again. The couple had their heads leaning together as they traveled down El Camino Real.

Escojido got a glance at the two men as they passed the bus stop. The Bronco made a U-turn and parked on a road, near a fence. There was "conversation" in the car, but defendant did not say anything. They were talking about the people at the bus stop, and all Escojido specifically recalled hearing was Perez and Basave say, "Let's do this." She did not know why they had stopped, but Perez (from the rear area), Basave (from the front seat), and then defendant all got out. They urinated on the fence and then walked together (defendant "a little bit behind") to the corner of El Camino Real, toward the bus stop. She was "worried" because she "didn't know why they were going back . . . ." She lost sight of them, the fence blocking her view, but after about five minutes heard four or five shots from behind and saw them come running back and get into the car. Defendant was first and got in the front seat. Escojido remained behind the driver, and Basave got in behind defendant. Guttierez drove off fast. Everyone was "just spooked" and "wanted to get out of there." Escojido asked the three if they had shot anyone, but they "just all said no"—not defendant "specifically," but there were "voices saying so." She did not see defendant with a red bandana that night, but testified that he always carried one with him.

6

As they drove on, Escojido saw a wallet and CD player, and finally a gun, being passed around. Basave, seated in the middle just to her right, took about $10 from the wallet and tossed the wallet forward onto defendant's lap. Defendant said nothing and, without looking through it, threw it out of his window, somewhere in a residential area of Belmont. Defendant was then handed the CD player and threw it on the floor. The gun emerged when the driver alerted everyone that a police car, its lights flashing, was behind them. Before they pulled over into a parking lot, Marco G. (seated to Basave's right and not one who had left the car at Ruth Avenue), tossed the gun onto defendant's lap. Defendant said nothing but passed it right back to Escojido, who put it in her bra, thinking he might be worried because of the police and that this "maybe" had to do with the shots at Ruth Avenue. Escojido had noticed ammunition at her feet, but not seen the gun being loaded.

All were removed from the car. When asked about the gun, Escojido told police that she had gotten it from defendant. Although assertedly knowing he had it only a few seconds and might be in trouble for it, Escojido never told police that Marco G. had given the gun to him; "They didn't ask me," she said. She led police to where the wallet had been tossed out the window.

**Police testimony.** An officer had spotted the Bronco soon after a radio call of "shots fired," but did not activate his lights until backup arrived to assist in the stop. All six occupants were ordered out, patted down and handcuffed. The gun was found on Escojido as she alighted. Defendant wore an orangish or red hooded sweatshirt bearing a logo; after *Miranda* advisements (*Miranda v. Arizona* (1966) 384 U.S. 436), he agreed to speak, doing so in English and without apparent drug or alcohol impairment or trouble understanding. When transported from one police station to another and re-*Mirandized* a couple of hours later, he likewise showed no trouble understanding or speaking English and, except for reddened eyes that could indicate marijuana use, did not appear to be under the influence of alcohol or drugs. An on-scene search of the Bronco for weapons revealed two boxes of ammunition behind the driver's seat, one "bullet" on the

floorboard where defendant had sat, and another in a storage compartment in the passenger door.

After first speaking with Escojido, police asked defendant where he had shot the gun and expressed their concern that someone may have been hurt. Defendant said it was "somewhere in Belmont" and insisted several times, "I just fired it in the air." Defendant agreed to show where he fired the gun. He rode with Officer Matthew Earnshaw, Officer Mike Supanich driving behind, down El Camino Real to where he looked "confused" at one point, directed a U-turn and pointed out the intersection of Ruth Avenue, near the bus stop. The investigation was still focused on shots fired and possible injury, not robbery, and defendant was taken to the San Mateo Police Department. Upon transfer later to the Belmont Police Department, he mentioned concern for a "juvenile involved" in the case, but did not admit robbery.

Later that morning, with robbery evidently now the focus, Escojido agreed to lead officers to where the wallet was thrown out the window. She did so, and a black leather wallet was found in a gutter at an intersection in San Mateo. Nothing was inside "except two rolled up $10 bills in a pocket" and a religious symbol. A later inventory search of the Bronco would disclose a Mexican identification card for Romero, some cards (one with his name on it), a portable CD player, a smoking pipe in a center compartment between the driver and front passenger seats, a $5 bill on the floorboard, a folded $2 bill atop the glove compartment, and loose coins.

A knife was found, and the gun found on Escojido proved to be loaded with six rounds. A bandana—the only one found—was found on defendant. Over 10 hours after the crimes, the hands and faces of defendant, Basave and Perez were swabbed for gunshot residue. All tests were negative, and expert testimony explained that this was not determinative given that powder residue is easily wiped off, especially from hands, through normal contact with clothing and other things.

When the victims came forward and were shown photo lineups, Jocop identified Basave as the man with the knife, and Romero identified no one.

8

**Defendant.** Defendant was the sole defense witness. Peruvian born and in this country for five years, the 21-year-old had studied English during and after high school, but testified through an interpreter, claiming he had trouble with English. Building on that trouble, he insisted that in making statements to police, he had responded in English, but not known "what they were asking" and never admitted personally firing a gun. Rather, he thought he was being asked if he *heard* a gun fired and, wanting to help, just showed them the intersection where he *heard* the shots.

Against all contrary evidence, defendant also denied wearing a bandana, carrying a gun to the bus stop, knowing what Perez and Basave were up to, walking with them, or contacting either victim. He said he neither heard anything said nor saw the victims before the stop on Ruth Avenue, got out only to urinate (upon seeing the others do so), and, while only wanting to get back in the car with his girlfriend, nevertheless "followed" after them when, without saying a word, they walked to the corner. He was "drunk" and "just following." As the friends ahead of him got to the bus stop, defendant saw Perez "talking to a young man," that they "were shouting," that Perez was "grabbing" the man and had "something reddish in color and black" "on his face," and that Basave was "close to" a second man and had his hand "on" or "up by the neck." The bandana in evidence was the one Perez had on. Defendant "had one just like that one" and always carried it with him, but did not have it out then. He stood four or five feet from his friends, surprised, unaware what either one was doing, but then seeing Perez "struggling" with the young man, push him against a car and take his wallet. Defendant could not see what Basave was doing but saw that Perez was robbing the other man. Defendant did nothing to intervene, stood there saying, "What is happening," and then walked slowly back across the street. Then, hearing "fireworks" or a gun and without looking back, he ran the rest of the way back, got into the Bronco's front seat and closed the door. Basave then opened the door and climbed in over him into the back seat; Perez got in some other way (maybe from the rear), and Guttierez drove off.

Defendant said he paid little attention to what went on behind him, did not look back, and did not know what Basave and Perez were doing. Then, "hands were coming

forward" passing things to him, first the wallet and then a pistol. He did not know who handed them up, but the wallet, which he "supposed" was the one Perez had just taken in the robbery, he threw out the window. The gun he took with his left hand and, thinking it had to do with the shots he heard, passed it back over his left shoulder, saying: "What is happening? What is happening?" He did not throw it out the window because the police were behind them. Someone—he did not know who—"grabbed" the gun. He did not know it was Escojido until told by police later. Defendant was notably inconsistent about where Escojido sat, testifying twice that she sat by the right window, directly behind him, and later, when pressed about how he passed the gun back, saying (consistent with Escojido's account) that she was "not behind me," but to his left, behind the driver.

Other conflicts in defendant's account included who was in the car when he and Escojido were picked up (all others, said Basave and Escojido, whereas defendant said they picked up Basave and Perez afterward), how long the group stopped in the hills before going down El Camino Real (one or two hours, defendant said, against Escojido's account of not even being picked up until 12:00 a.m. to 12:30 a.m.), and being passed the CD player (not mentioned by defendant) Defendant said he loved Escojido and planned to marry her.

In speaking to officers at and after the stop, defendant knew it would help him and possibly get him released if he revealed that others had passed him the wallet and gun, yet he never mentioned this. He said no one asked him.[2]

---

[2] Jurors learned of Basave's conviction, but not of any other arrestee's criminal outcome. The presentence report shows the dismissal as to Escojido, driver Gutierrez's plea of no contest to conspiracy (with receipt of formal probation with a nine-month jail term), Perez's plea of no contest to second degree robbery with serious-felony allegations (and resulting probation and a year in jail), and evident juvenile charges against Marco G. for robbery conspiracy, and his ultimate failure to appear.

## DISCUSSION

### I. *Sufficiency of Evidence*

Claiming a denial of due process, defendant contends that there is insufficient evidence to sustain his conviction for robbing Jocop and, hence, no basis to sustain the dependent enhancements (see generally *People v. Dennis* (1998) 17 Cal.4th 468, 500) for personal use and discharge of a firearm during the crime's "commission" (§ 12022.53, subds. (b) & (c)). We find sufficient evidence.

"[Our] task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) If the circumstances reasonably justify the jury's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal. (*Ibid.*) Our standard of review is the same when the evidence of guilt is primarily circumstantial. (*People v. Holt* (1997) 15 Cal.4th 619, 668.) When the jury has relied on inferences, those inferences must be reasonable, not based only on speculation (*id.* at p. 669); inferences are reasonable when drawn from the facts (*People v. Morris* (1988) 46 Cal.3d 1, 21).

Defendant argues, in essence, that because no evidence showed him personally take anything from Jocop, point the gun at him, or expressly agree to join in a robbery of Jocop, the evidence is insubstantial.[3] We disagree.

Robbery is the felonious taking of personal property in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear. (*People v. Harris* (1994) 9 Cal.4th 407, 433.) Jurors were so instructed (CALJIC No. 9.40) and apprised that a robbery is still in progress during flight (CALJIC No. 8.21.1). They also had instruction on aiding and abetting (CALJIC Nos. 3.00, 3.01), with guidance that mere assent to or aid in a crime without knowing the unlawful purpose of the perpetrator, or intending to commit, encourage or facilitate the crime, is not enough (CALJIC No. 3.14) and that aider and abettor liability may attach so long as the stolen property is being carried away to a place of temporary safety (CALJIC No. 9.40.1). None of that instruction is challenged.

To narrow the inquiry, we first acknowledge what is *not* disputed. Based on defendant's testimony of being a clueless tag-along, the defense below posited that he was not the gunman, but he concedes on appeal that substantial evidence supports the jury's contrary conclusion. Nor does he dispute the jury's count-one findings that he robbed Romero, using a gun in so doing. Next, we acknowledge the People's arguments

---

[3] His briefing claims, in error, that Escojido's testimony was "suspect" because she said Basave handed defendant the CD player and that "he threw it out the window," whereas the CD player was in fact Romero's and later found still in the Bronco. The record citation given by defendant for the CD player being thrown out the window does not support him; Escojido testified there, and elsewhere, that defendant threw it *on the floor*—exactly where it was found. Only the wallet was thrown out the window.

As for the CD player being Romero's and not Jocop's, we do not understand how this rendered Escojido's testimony "suspect." Yes, Romero testified that he had lent it to Jocop to use, and Jocop testified that he had borrowed it from Romero. We do not see, however, how Escojido would have known that or that she even claimed to know which victim's property it was. Nor do we consider this to be a legal challenge to given robbery instruction that rendered criminal the act of taking property "in the possession of another" (CALJIC No. 9.40), without requiring that the possessor be the owner. Defendant cites no contrary authority.

12

that evidence supports defendant having acted together with his cohorts and therefore as a direct perpetrator of the Jocop robbery as well. Defendant protests the theory because the prosecutor relied on aiding and abetting in arguing to the jury. We cannot assume, on substantial evidence review, that such urgings limited the jury (*People v. Perez* (1992) 2 Cal.4th 1117, 1128-1129), but we do shorten the analysis by finding substantial evidence on the aiding and abetting theory. This, of course, does not mean that further analysis of the same facts might not support direct perpetration as well. "When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.)

The instructions in this case did not include language on the natural and probable consequences doctrine of aiding and abetting. Thus only guilt of the intended crime was relevant. (*People v. McCoy, supra*, 25 Cal.4th at p. 1117.) "[O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator. 'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." [Citation.] When the offense charged is [, like robbery,] a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent of purpose of facilitating the perpetrator's commission of the crime." [Citation.]' " (*Id.* at p. 1118.)

Defendant concedes substantial evidence that he knew the unlawful purpose of his cohorts. We agree based on testimony that, between the time the Bronco first passed the men at the bus stop and then turned around to pull off on the side street, there was loud discussion of "jacking" the men and a call to the effect, "Let's do this," before Perez, Basave and defendant got out. Even if jurors doubted that defendant contributed to that discussion, they could easily conclude that he heard it, a conclusion strongly reinforced by the fact that he got out of the car with a loaded pistol, something far beyond what he

reasonably needed to relieve himself against the fence. "Aiding and abetting does not require participation in an agreement to commit an offense, but merely assistance in committing the offense." (*People v. Morante* (1999) 20 Cal.4th 403, 433.)

Defendant contends, however, that nothing reasonably shows that, if he knew that and even went on to rob Romero at gunpoint, he facilitated or encouraged the robbery of Jocop, or did anything intended to have that effect. We disagree. Jumping to the actual robbery, defendant stresses that he never touched, spoke to or took anything from Jocop, and thus tries to argue that his gunshots on the way back to the Bronco made him, at best, an accessory after the fact. However, jurors could reasonably infer from his possession of the gun that he intended *from the moment he left the car* to facilitate the robbing of both men, particularly since there was no evidence that Romero alone was designated as the target. Further, according to Romero, defendant put on a bandana while the three were still on the far side of El Camino Real, drew his gun as they reached the center divider, and led the others by about 10 feet in crossing the rest of El Camino Real, his gun still drawn. The only logical inference is that he meant to provide support to his companions and convince either of the victims that the three meant business and would use deadly force if resisted. That is precisely the effect it had on Romero, who said he was frightened and warned Jocop that someone was coming "for something." Jocop may not have seen the gun until he removed his headphones and saw the three approaching, but we are concerned here with defendant's intent, not the timing of Jocop's first reaction. Moreover, Jocop testified that, as or before the knife man came at him, he saw defendant approach with a mask on and his gun drawn; he was frightened by the gun and witnessed, just a few feet to his right that defendant trained the gun on Romero as he pushed him and demanded his wallet. Jurors could reasonably find that brandishing the gun was meant to facilitate the robbery of both men, even if defendant focused in the end on Romero. The gun, unlike the knife, was a deadly threat even if used from several feet away. Jurors could further infer, from the close proximity of Jocop and simultaneous robbings in the space of a minute, that defendant's acts of roughing up Romero were meant to intimidate Jocop. In the full circumstances of a concerted simultaneous

14

approach by three men, two with deadly weapons, "the jury could reasonably infer that defendant and [the other] robber[s] were working together"; thus the evidence of aiding and abetting is sufficient. (*People v. Hill* (1998) 17 Cal.4th 800, 851-852.) It is immaterial that defendant was busy with Romero and did not take property from Jocop himself; an aider and abettor need not personally engage in all the elements of the crime (*People v. Morante, supra*, 20 Cal.4th at p. 433).

Defendant invokes the familiar principles that mere presence or failure to try to stop a crime are not enough to constitute aiding and abetting, but while neither "is alone sufficient to establish" liability, "[s]uch evidence may . . . be considered together with other evidence in determining that a person is an aider and abettor." (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460.) The jury reasonably rejected, as lies, defendant's claimed lack of a gun and ignorance of what was going on. Thus they could reasonably find that he was the gunman, led the charge across the street, and personally battered and robbed one of two victims while his cohorts took turns confronting and robbing the other. This was not a case of "mere" presence or "mere" failure to take action.

Next, defendant fired shots into the air as the three fled, not yet having reached a place of temporary safety. One of them had just reacted to yells from Jocop by throwing Jocop's wallet (emptied of its cash) back toward him, and as Jocop went to retrieve it at the sidewalk, the trio now at the center divider, defendant fired rounds into the air as his colleagues ran ahead. A reasonable inference is that defendant was sounding a warning to assist the trio's escape with the loot—including the CD player and money taken from Jocop. This was not, as defendant tries to analogize to cases on getaway drivers as mere accessories, mere assistance in the escape of a principal. Defendant had actively engaged in the enterprise since leaving the car.

Also, as jurors were instructed, flight after a crime may itself be considered, along with other evidence, as showing guilt (§ 1127c), thus giving the flight across El Camino Real relevance apart from the shooting. Defendant argues that flight was also consistent with guilt solely for the robbery of Romero, but this was a factual matter for the jurors.

They could reasonably infer that it showed consciousness of guilt (e.g., *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095 [aider and abettor]), for the combined robberies.

Defendant disputes the worth of events occurring in the car after the Bronco drove away, characterizing them as showing, at best, guilt as an accessory. Arguing that he had no conscious possession of stolen goods (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1171), defendant stresses that he handled the stolen CD player only briefly and asserts that Escojido testified that he threw it out the window. As explained above, however, Escojido actually testified that he threw the CD player *onto the floor* (fn. 3, *ante*), not out the window. It was reasonable for jurors to infer that throwing it onto the floor right at his feet, where he *retained* dominion and control of it, was inculpatory.

Substantial evidence supports defendant's robbery of Jocop.

## II. *Lesser Included Offenses*

The offense of robbery includes all of the elements of theft, with the additional element of a taking by force or fear. (*People v. Davis* (2005) 36 Cal.4th 510, 562.) The defense requested instruction on, among other things, grand theft from the person (§ 487, subd. (c)) and petty theft (§ 486). The court denied the request, saying that the evidence did not support it. The parties agree that the offenses were lesser included, but differ on the propriety of the ruling. Defendant claims a denial of his constitutional rights to due process, to trial by jury, and to present a defense. We find no error.

Lesser included offense instruction must be given only when the evidence warrants it. "[T]here must be substantial evidence of the lesser included offense, that is, 'evidence from which a rational trier of fact could find beyond a reasonable doubt' that the defendant committed the lesser offense. [Citation.] Speculation is insufficient to require the giving of an instruction on a lesser included offense. [Citations.] In addition, a lesser included offense instruction need not be given when there is no evidence that the offense is less than that charged. [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.)

Defendant relies on the fact that two people took property from Jocop. First, Basave took his wallet at knifepoint; then, Perez came over without a weapon and, in

16

Jocop's words, "took the C.D. player from my hand." Defendant posits that, since Perez
was unarmed, jurors could have found that Perez used no more force than was necessary
to accomplish the *mere seizing of the property* (*People v. Morales* (1975) 49 Cal.App.3d
134, 139), and thus "without the use of force" needed for robbery, making the offense
committed or aided and abetted just grand theft from the person. For petty theft, his
theory assumes (without evidence) that the CD player was worth less than $400 (§ 487,
subd. (a)) and is otherwise a bit obscure. He contends that jurors could have concluded
that he "intended only to share in the theft of the property taken from Jocop"—evidently
meaning after the taking but during flight.

We find no substantial evidence that the offense was less than robbery. We do not
test just for evidence to support the lesser offense; rather, we test for evidence to support
that *the lesser offense, but not the greater*, was committed. (*People v. Hughes* (2002)
27 Cal.4th 287, 366-367.) Defendant's focus on Perez's taking of the CD player not
being accomplished by *force* is flawed. While evidence of physical force beyond that
needed for the taking may be absent (or at least unclear) here, the test for robbery is force
*or fear* (§ 212), and defendant does not address *fear*, the evidence of which is
overwhelming. Jocop said he feared for himself and Romero upon seeing the masked
man with the gun approach them and attack Romero, and the other man hold a knife close
to his neck and demand his own wallet. It is pure speculation that, in the mere seconds
that transpired between the knife man taking his wallet and the unarmed man taking his
CD player, Jocop ceased to be afraid and opted to give away his CD player without that
compulsion. Indeed, Jocop testified that he was *still frightened*—but not thinking
clearly—when he called out to the fleeing men to return his wallet.

Nor is there substantial evidence to support petty theft but not robbery. First,
defendant's theory is ill-explained and short on legal authority. If, as he asserts, jurors
could have found that he "intended only to share in the theft of the property taken from
Jocop," this seems to imply that, sometime after Perez nonforcibly took the CD player,
defendant formed an intent to join in that theft. We are cited no authority that extends the
time for joining or aiding and abetting a simple theft—as opposed to a robbery—into the

period of flight to temporary safety. Besides, the idea that defendant applied force and fear in robbing one victim at gunpoint and then decided to "share in the theft" of goods taken *without force or fear* by a cohort acting just feet away—a cohort who had just left his side in forcibly robbing the first victim—is bizarrely speculative on these facts.

No error in refusal to give lesser included instruction is shown.

### III. *Unanimity*

Relying once more on the fact that there were two takings from Jocop, defendant contends that the court had a duty to instruct, on its own motion, that jurors had to agree unanimously on which taking or takings constituted the robbery. Tailored to the aiding and abetting theory probably relied upon by the jury, defendant insists that jurors needed this guidance to decide "whether . . . he aided and abetted Basave to take the wallet or aided and abetted Perez to take the C.D. player." We conclude that no sua sponte duty arose to give a unanimity instruction.

A unanimity instruction, such as CALJIC No. 17.01, is required only if jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged. (*People v. Beardslee* (1991) 53 Cal.3d 68, 93.) The requirement applies to robbery (*People v. Riel* (2000) 22 Cal.4th 1153, 1199 [special circumstance]) and may be raised on appeal despite, as here, lack of a trial request; a trial court has an obligation to give such instruction on its own "when the circumstances so warrant" (*People v. Davis, supra,* 36 Cal.4th at p. 561). The obligation does not arise "when the acts alleged are so closely connected as to form part of one transaction. [Citations.] The 'continuous conduct' rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.) Jurors must unanimously agree on all elements of the charged offense, but need not agree as between theories of aiding and abetting and direct perpetration, or on "the factors that establish aiding and abetting liability . . . ." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1025 [murder].) This is so even though different evidence and facts support each conclusion. (*Id.* at pp. 1025-1026.)

The People argue, among other things, that the continuous conduct rule applies, but we have a different answer. Bearing in mind that a unanimity instruction is required only if jurors could otherwise disagree which act *a defendant committed* and yet convict him of the crime charged (*People v. Beardslee, supra*, 53 Cal.3d at p. 93), we find no duty to instruct. Yes, the evidence showed two direct perpetrators in Jocop's robbery, but the evidence also showed that defendant, as an aider and abettor, did not act significantly different as between the two perpetrators in that robbery. Defendant led both cohorts across El Camino Real, masked and with gun drawn, assaulted one victim with his gun in a violent display of force, did so while each perpetrator took property from Jocop just a few feet away, fled with both perpetrators, fired his gun into the air at the center divider, and left with them in the waiting Bronco. Defendant does not satisfactorily explain how any reasonable juror could have differentiated his aiding and abetting as between Basave and Perez. No evidence shows that he said or did anything directed at just one of them. He speaks of his handling of the CD player in the Bronco afterward, urging that it shows a weaker connection to Perez than to Basave, but defendant's acts of aiding and abetting necessarily *preceded* his return to the Bronco. On these facts, jurors who found that he performed those acts of aiding and abetting, regarding Jocop's robbery, would have done so without differentiating any action assisting Basave over Perez, or vice versa.

**DISPOSITION**

The judgment is affirmed.

_____
Kline, P.J.

We concur:

_____
Lambden, J.

_____
Ruvolo, J.*

* Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

NAME: QUISPE, CESAR

CDC NO: V-26590 HOUSING: B-7-230

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

RECEIVED

FEB 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. NORTHERN DISTRIC COURT
450 GOLDEN GATE AVE
SAN FRANCISCO, CALIFORNIA
94103